## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES GRANT MOZINGO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:20-00504-N |
| | ) | |
| KILOLO KIJAKAZI, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff James Grant Mozingo brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for child's insurance benefits based on disability ("CIBBOD") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 21, 22, 25) and those portions of the certified transcript of the administrative record (Doc. 13) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED**, and this cause **REMANDED** for further administrative proceedings.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)). "Congress amended the Social Security Act in 1939 to provide a monthly benefit for designated surviving family members of a deceased insured wage earner. 'Child's insurance benefits' are among the Act's family-protective measures. 53 Stat. 1364, as amended, 42 U.S.C. § 402(d)." *Astrue v. Capato ex rel. B.N.C.*, 566 U.S. 541, 547, 132 S. Ct. 2021, 182 L. Ed. 2d 887 (2012).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this

## I.   *Procedural Background*

Mozingo filed the subject CIBBOD application with the Social Security Administration ("SSA") on April 24, 2018. After it was initially denied, Mozingo requested, and on December 11, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On January 15, 2020, the ALJ issued an unfavorable decision on Mozingo's application, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 13, PageID.69-92).

The Commissioner's decision on Mozingo's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on August 20, 2020. (*Id.*, PageID.58-62). Mozingo subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the

---

civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 28, 29; 8/3/2021 text-only order of reference). With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 26, 27, 30).

Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971]) (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence

preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation

omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it...' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court...Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').").); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.,* *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) ... As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)

---

… However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited.").

(per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's

decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for CIBBOD requires a showing that, "at the time the application was filed[,]" the claimant "was unmarried and … is under a disability … which began before he attained the age of 22…" 42 U.S.C. §§ 402(d)(1)(B)(ii).[6] "Disability" means that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC")

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] A showing of disability is not required for child's insurance benefits if, at the time the application was filed, the claimant "was unmarried and … either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19…" 42 U.S.C. § 402(d)(1)(B)(i).

> assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's]

medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Mozingo had not attained age 22 as of, and had not engaged in substantial gainful activity since, the amended alleged disability onset date of April 24, 2018.[8] (Doc. 13, PageID.74-75). At Step Two,[9] the

---

[8] Mozingo's application initially alleged disability beginning May 1, 2017, but was granted leave to amend the alleged onset date to April 24, 2018, at the ALJ hearing. (*See* Doc. 13, PageID.72).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d

ALJ determined that Mozingo had the following severe impairments: cervicogenic headache, migraine, trigeminal neuralgia, occipital neuralgia, post-herpetic neuralgia, and myofascial pain syndrome. (Doc. 13, PageID.75). At Step Three,[10] the ALJ found that Mozingo did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 13, PageID.75-78).

At Step Four,[11] the ALJ determined that Mozingo had the residual functional

---

1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

capacity (RFC) "to perform sedentary work as defined in 20 CFR 404.1567(a)[12] except [he] can lift and carry up to 10 pounds occasional and less than 10 pounds frequently[;] can occasionally stoop, balance, kneel, crouch, and crawl[;] can never climb ladders, ropes, or scaffolds[; e]nvironmentally, … should avoid concentrated exposure to extreme cold, extreme heat, and pulmonary irritants, such as fumes, odors, dust, and gas[;] should avoid all exposure to hazardous conditions, such as

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "sedentary" work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

unprotected heights, dangerous machinery, and uneven surfaces[;] is expected to have no more than two absences monthly due to his impairments, associated symptoms, and medication side effects[; d]ue to chronic pain, … is limited to performing unskilled work involving no more than simple, short instructions and simple work related decisions with few workplace changes[; and] can occasionally interact with the general public, supervisors, and coworkers." (Doc. 13, PageID.78-86). The ALJ also determined that Mozingo had no past relevant work. (*Id.*, PageID.86).

At Step Five, after considering testimony from a vocational expert,[13] the ALJ found that there existed a significant number of jobs in the national economy as an addresser (53,000 nationally), surveillance systems monitor (141,000 nationally), and bench hand (90,000 nationally) that Mozingo could perform given his RFC, age, education, and work experience. (Doc. 13, PageID.86-88). Thus, the ALJ found that Mozingo was not disabled under the Social Security Act from the disability onset date through the date of the ALJ's decision. (*Id.*, PageID.88).

## IV.   *Analysis*

Mozingo claims that the ALJ failed to properly consider whether his severe impairment of migraines medically equaled Listing 11.02 at Step Three. Reversible

---

[13] "[T]he ALJ may determine whether the claimant has the ability to adjust to other work in the national economy … by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

error has been shown in this regard.

According to Social Security Ruling 19-4p, "[p]rimary headache disorders are among the most common disorders of the nervous system. Examples of these disorders include migraine headaches, tension-type headaches, and cluster headaches." SSR 19-4p, 2019 WL 4169635, at *2 (Aug. 26, 2019) (footnote omitted).[14]

> Primary headache disorder is not a listed impairment in the Listing of Impairments (listings); however, [the Commissioner] may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing.

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures[[15]]), and we may find that his or her MDI(s) medically equals the listing.

---

[14] Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Federal courts hearing appeals of the Commissioner's final decisions are not bound by SSRs, but they are accorded "great respect and deference where the statute is not clear and the legislative history offers no guidance." *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Apr. 1981). Moreover, courts "require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals. This is the case even where … the internal procedures are more rigorous than otherwise would be required." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (citations and quotations omitted). The Commissioner has not argued that she should not be bound by SSR 19-4p in this case.

[15] "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." 20

Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

SSR 19-4p, 2019 WL 4169635, at *7 (footnotes omitted).

At Step Three, the ALJ found that "the severity of [Mozingo]'s impairments does not meet the specific requirements of any of the impairments listed by the Commissioner in Appendix 1[,]" and specifically found that Mozingo's "headaches, migraines, and neuralgia conditions do not meet the requirements of any listing

---

C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00H(1)(b).

level impairment under listing 11.00, et seq. or combination of impairments." (Doc. 13, PageID.76). Mozingo first argues that the ALJ's Step Three reasoning is insufficiently detailed as a matter of law to allow for meaningful review of whether the ALJ correctly determined that Mozingo did not satisfy Listing 11.02. The undersigned disagrees.

Unlike other circuit courts on whose decisions Mozingo relies in arguing this point,[16] the Eleventh Circuit Court of Appeals generally does not require detailed reasoning at Step Three. Though it has "noted 'that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued[,]' " the Eleventh Circuit has held that "specific findings as to the Listings in Appendix 1 are not required…" *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 842 n.5 (11th Cir. 2019) (per curiam) (unpublished) (alterations added) (quoting *Barron v. Sullivan*, 924 F.2d 227, 230 n.3 (11th Cir. 1991)). Rather, "[w]hile Appendix 1 must be considered in making a disability determination, it is not required that the [Commissioner] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a

---

[16] *See, e.g.*, *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[T]he ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment. Such a bare conclusion is beyond meaningful judicial review. Under … 42 U.S.C. 405(b)(1)[,] the ALJ was required to discuss the evidence and explain why he found that appellant was not disabled at step three." (citation omitted)); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so.").

listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Building on that point, the Eleventh Circuit has held it was "clear that [an] ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that [a claimant] did not meet any of the Appendix 1 impairments[,]" and proceeded to review that finding for substantial evidence. *Id. See also Bailey*, 782 F. App'x at 842 ("Here, the ALJ identified as a severe impairment Bailey's cirrhosis of the liver with both ascites, which relates to Listing 5.05B, and with hepatic encephalopathy, which relates to Listing 5.05F. The ALJ also explicitly found that Bailey's impairments, individually and in combination, did not meet any listed impairment. The ALJ then proceeded to steps four and five of the sequential analysis. Thus, the ALJ's explicit finding that Bailey's impairments did not meet a listed impairment included implicit findings that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy did not meet Listing 5.05B or F. Under our precedent, the ALJ was not required to make more explicit findings as to Listing 5.05B and F." (citing *Hutchison*, 787 F.2d at 1463)); *Carstarphen v. Kijakazi*, No. CV 1:20-00506-N, 2022 WL 957552, at *7-10 (S.D. Ala. Mar. 29, 2022) (determining, after surveying and harmonizing at-times conflicting Eleventh Circuit precedent, that detailed findings are generally not required at Step Three).

Nevertheless, even though he was not required to under circuit precedent, the ALJ chose at Step Three to explain his reasoning as to why Mozingo did not satisfy Listing 11.02. Because the ALJ did so, the Court must hold him to that reasoning, since "an agency's order must be upheld, if at all, on the same basis

articulated in the order by the agency itself." *Texaco Inc.,* 417 U.S. at 397. It is well-established that a federal court cannot substitute its judgment for the Commissioner's when reviewing one of her final decisions, *see, e.g.*, *Winschel*, 631 F.3d at 1178, but that rule cuts both ways—while it entitles the Commissioner's factual findings to deference so long as they have sufficient evidentiary support, it also means the Court cannot disregard the Commissioner's stated reasoning and "affirm simply because some rationale might have supported the [Commissioner]'s conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. *See also Bloodsworth*, 703 F.2d at 1239 (in addition to being "supported by substantial evidence," the Commissioner's decision must also be "reasonable" to warrant affirmance). And the undersigned agrees with Mozingo's alternative contention that the ALJ's stated reasoning does not show that he properly evaluated Mozingo's migraines under Listing 11.02 and SSR 19-4p.

Correctly noting SSR 19-4p's guidance that "Listing 11.02 Epilepsy is the most analogous listing for considering medical equivalence" for migraines, the ALJ set out the "[i]nformation [SSR 19-4p states is to be] used to consider migraine heachaches equivalency to 11.02B..." (Doc. 13, PageID.76-77).[17] Next, the ALJ stated that, "[i]n addition to the above information we use to consider migraine headaches equivalency to 11.02B, we use the following information for the purposes of considering 11.02D (only): []The overall effects of migraines on functioning,

---

[17] While the ALJ's decision does not expressly cite SSR 19-4p, his Step Three analysis largely tracks that ruling's guidance.

particularly whether there is a marked limitation in any of the areas of functioning: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adopting or managing oneself." (*Id.*, PageID.77). The ALJ then stated as follows: "The evidence fails to establish marked limitations in the areas designated above; therefore, the claimant's headaches, migraines, neuralgia, and pain condition do not satisfy any of the listings." (*Id.*). The remainder of the ALJ's Step Three analysis explains why the ALJ determined that Mozingo had no marked or greater limitation in any of the four above-mentioned areas of functioning. (*See id.*, PageID.77-78). As Mozingo correctly points out, the ALJ's stated reasoning—that a failure to establish marked limitations in any of the four functional areas means a failure to "satisfy any of the listings"—is "patently erroneous" because a marked limitation in one of the four functional areas is only required in order to meet Listing 11.02D. Listing 11.02B requires no such showing; therefore, to find Mozingo did not meet Listing 11.02B solely for failure to demonstrate a marked limitation is an error of law.

The factors used to determine whether a headache disorder is medically equivalent to "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment," in order to meet Listing 11.02B, are also considered in determining whether a headache disorder is medically equivalent to "dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment" in

order to meet Listing 11.02D. *See* SSR 19-4p, 2019 WL 4169635, at *7. Moreover, a finding that those mutually applicable factors were insufficient to meet Listing 11.02D would also appear to necessarily preclude a finding that Listing 11.02B is met, since Listing 11.02B requires greater seizure/migraine frequency than Listing 11.02D. Thus, had the ALJ made a separate finding as to those mutually applicable factors, even only as to Listing 11.02D, his erroneous statement suggesting that a marked limitation is required to meet Listing 11.02B might be deemed harmless. However, considered as a whole, the ALJ's decision fails to suggest with "at least some measure of clarity" that such a finding was made. *Owens*, 748 F.2d at 1516. Certainly, the ALJ's decision discusses evidence relevant to Listing 11.02B and Listing 11.02D's mutually applicable factors in making other determinations, such as the degree of limitation in the four functional areas at Step Three, and the RFC at Step Four. However, given the ALJ's express, and erroneous, reliance on only a failure to show a marked functional limitation in finding Mozingo did not meet Listing 11.02B, the Court cannot infer from the ALJ's consideration of evidence in other contexts that a reasoned medical equivalence decision was made for either Listing 11.02B or 11.02D based on their mutually applicable factors. To do so would be impermissibly "affirm[ing] simply because some rationale might have supported the [Commissioner]' conclusion. *Id.*[18]

---

[18]    In light of this finding of reversible error, the undersigned declines to consider Mozingo's additional claim that the ALJ's finding he did not have a marked limitation in any of the four functional areas is not supported by substantial evidence. Even if Mozingo is correct on this point, he still might not be found to meet Listing 11.02D based on a consideration of Listing 11.02B and Listing

Mozingo asks the Court to remand to the Commissioner with a finding that he meets Listing 11.02B, which would appear to mandate a finding of disabled. The Eleventh Circuit has recognized that reversal with remand to the Commissioner for further proceedings is generally warranted where, as here, "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.*, Mozingo has failed to convince the undersigned that either of those requirements is

---

11.02D's mutually applicable factors. The Commissioner's resolution of that issue on remand—either by finding that Mozingo meets Listing 11.02B, or that the mutually applicable factors do not demonstrate medical equivalence for Listing 11.02D—may pretermit the need to determine whether Mozingo also has a marked limitation for purposes of meeting Listing 11.02D. For similar reasons, the undersigned also declines to address Mozingo's additional claims that the ALJ erred in formulating the RFC, and that he did not ask a complete hypothetical to the vocational expert. Depending on how the Commissioner resolves the reversible error identified at Step Three on remand, the need to determine an RFC and question a vocational expert may be pretermitted. *Cf. Pupo*, 17 F.4th at 1066 n.4 ("Pupo's remaining issues on appeal challenge the ALJ's decision to not give controlling weight to her doctors' opinions and finding that her mental impairments did not meet a listed impairment. Because we remand on two of her other issues, we offer no opinion as to whether the ALJ erred in these regards. On remand from the district court, the ALJ is to reconsider Pupo's claim based on the entire record."). The undersigned expresses no opinion on what conclusions the Commissioner should reach on these issues on remand.

The decision to not address these additional issues should not hamper effective appellate review of this decision, if any. *See Henry*, 802 F.3d at 1267 ("Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion…" (citation and quotation omitted)).

met here. [19] Since the reversible error identified is the ALJ's reliance on an inapplicable factor in finding Mozingo did not equal Listing 11.02B, and since the Appeals Council denied review of the ALJ's decision, the undersigned cannot be sure that the Commissioner has "already considered the essential evidence" on this issue. Moreover, even considering the evidence Mozingo has cited as supportive of his equaling Listing 11.02B, Mozingo has failed to conclusively show that, on remand, the ALJ cannot possibly provide adequate grounds supported by substantial evidence for determining that he does not equal that listing. Indeed,

---

[19] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts … The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain; presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

Mozingo only argues that "[t]he *substantial* evidence in the record supports a finding that [his] headaches equal the criteria of Listing 11.02(B)" (Doc. 22, PageID.629 (emphasis added))—meaning that other substantial evidence, or even a preponderance of it, may support a contrary finding. *See Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate.")

Moreover, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the

courts are then to respect the administrative determination."). The undersigned finds no reason to believe this case is one of the "rare circumstances" where remand to the agency is not the proper remedy.[20]

Accordingly, the Commissioner's final decision denying Mozingo's application for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Mozingo's April 24, 2018 CIBBOD application is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Mozingo a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Mozingo's counsel an extension of time in which to file a motion for fees under 42

---

[20] In *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982), the Eleventh Circuit reversed the final unfavorable decision and ordered an award of benefits after finding the claimant there had suffered an "injustice" "[d]ue to the perfunctory manner of the hearing, the quality and quantity of errors pointed out, and the lack of substantial evidence to support the ALJ's decision…" 672 F.2d at 840. Mozingo has not argued that he suffered a similar "injustice," and regardless this case is not similar to what occurred in *Walden*.

U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Mozingo be awarded benefits on the subject application following this remand.[21] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

 Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

 **DONE** and **ORDERED** this the 28th day of June 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").